[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action to foreclose a mortgage on property belonging to the defendant Joanna Page and located at 74 Old Long Ridge Road in Stamford.
On December 12, 1986 the defendant Campbell-Heath Inc., a corporation owned and controlled by defendant Page and defendant Frances D'Ippolito, signed a promissory note for $302,000 in favor of Capital Impact Corporation, a subsidiary of the plaintiff Citytrust. The note called for interest at an annual rate of 13% plus costs of collection including reasonable attorney's fees. The defendants Page and D'Ippolito and Statements of Value Inc., another corporation controlled by these defendants, all guaranteed this note. Defendant Page to secure her guarantee granted second mortgage on her home in Stamford to Capital Impact which subsequently assigned the note and mortgage to the plaintiff Citytrust. At the closing on December 12, 1980 Capital Impact advanced $262,000 and is now seeking to recover that amount plus interest.
It is conceded that no portion of the note was ever paid by Campbell-Heath or by the three guarantors. The remaining $40,000 of the $302,000 promissory note was not advanced at the time of the closing because Capital Impact was seeking additional security in the form of a lien on defendant D'Ippolito's cooperative apartment on East 65th Street in New York City. This lien was never perfected and Capital Impact never did advance the additional $40,000.
The defendants Page and D'Ippolito have filed four special defenses and a counterclaim, all alleging in effect that the failure of Capital Impact to lend the $40,000 in question caused the ruin of Campbell-Heath, which was in the ladies garment business featuring designer sportswear. These defendants also claim that Capital Impact committed to lend them $350,000 and subsequently reneged on that commitment and only lent $302,000. The defendants Page and D'Ippolito also claim that they suffered severe emotional distress and CT Page 1501 physical injury, and their counterclaim also asserts a violation of General Statutes S 42-110a et seq., the Connecticut Unfair Trade Practices As. In their brief the defendants allege that as a result of Capital Impact's actions they have suffered "three and one-half years of agony" and further claim that "considering the size and economic power of the lender, an award of five million dollars per Defendant is not unreasonable."
I find that the defendants have failed to prove either their special defenses or counterclaim. Campbell-Heath received $262,000 from Capital Impact, which has not been repaid, and therefore these two defendants as guarantors are liable for the funds advanced by the bank, plus interest thereon from December 12, 1986 to the present date.
Analyzing the special defenses and counterclaim in more detail, the first issue is whether the plaintiff's assignor Capital Impact ever formally committed itself to lend $350,000 to Campbell-Heath, and the answer is no. The defendants did submit as an exhibit an unsigned letter from Capital Impact dated November 20, 1986, discussing a "proposed" loan of $350,000, but this document described itself as an "expression of intent" and said that it was "not intended to be a commitment on our part to make any loan. . . Our willingness to make a loan to you is subject to final negotiation of the terms and conditions. . .(and) the preparation and execution of a definitive loan agreement. . ."
As to the refusal of Capital Impact to lend the full amount of the promissory note, $302,000, the evidence at the trial indicates that it was fully understood by all the parties that the additional $40,000 would only be advanced if the lender could perfect a security interest on the D'Ippolito co-op in New York City. Defendants Page and D'Ippolito signed a letter of intent accepting the loan of $302,000 which indicated that the remaining $40,000 would be "disbursed upon Capital is receipt of an adequate security interest in further collateral." This letter also stated that Capital Impact sought collateral in the nature both of a second mortgage of the Page home and a "security interest" on the New York co-op. This understanding was al so explicitly referenced in the December 12, 1986 promissory note itself which stated;
 Capital has advanced the sum of $262,000.00 on the date of this deed; the balance of the proceeds of this loan shall be disbursed by future advancements, which shall be made at CT Page 1502 such time, and in such manner and for such amounts as Capital, in its sole and absolute discretion, may deem appropriate and provided, further, that any such future advancements shall be made only upon Capital's determination that adequate collateral has been provided to Capital to secure any and all such future advances. . . .
Capital was not able to perfect a lien on the D'Ippolito co-op because Lincoln Savings Bank, who held the first mortgage on this co-op, and whose approval was required before a junior lien could be placed on the premises, refused to agree to send to Capital Impact certain documents. Capital Impact sought physical possession of D'Ippolito's certificate of stock ownership and the proprietary lease in the co-op if and when Lincoln Savings Bank's first mortgage was satisfied. Lincoln never agreed to send or transfer these documents to Capital Impact, which in turn decided that without such an agreement from Lincoln Savings it would not lend the additional $40,000 on the theory that it did not have a valid lien on the New York co-op. Moreover, the board of directors of the D'Ippolito co-op agreed only that Mr. D'Ippolito could place a second lien on the co-op in the amount of $20,500, not $40,000. ("The undersigned hereby consents to a subordinate pledge of your shares of 315 East 65th Owners Corp. allocated to Apartment 8J. . .as security for a loan from Capital Impact Corporation to you in an amount not to exceed $20,500.")
With respect to the claim that the inability of Campbell-Heath to obtain the $40,000 in question caused the ruin of the business, the evidence indicated that Campbell-Heath planned to use the proceeds of the $302,000 loan from Capital Impact to, among other things, pay off a loan to Union Trust in the amount of $60,000. This loan was never paid and the result was that Campbell-Heath ended up with more money than it would have received had Capital Impact loaned the additional $40,000 and Campbell-Heath then had paid Union Trust.
Moreover, the evidence indicated that neither defendant, Page nor D'Ippolito, had any genuine experience in the garment industry and the plaintiff argues that the demise of Campbell-Heath was due to that inexperience and the vagaries of the market, rather than the refusal to loan the additional $40,000. In any event, the defendants failed to prove their counterclaim, including the CUTPA count, and the plaintiff is entitled to judgment on its complaint as CT Page 1503 the defendants have failed to prove any valid defense to this action.
Hence, judgment may enter in favor of the plaintiff against all defendants, jointly and severally, in the amount of $262,000 principal plus interest thereon at 13% a year from December 12, 1986 to February 8, 1991, which, according to my calculations, amounts to $185,675.98, for a total of $447,675.98, plus costs as taxed by the clerk.
The promissory note in question also called for the payment of legal fees, but that matter was not addressed in detail until the underlying issues were decided. Hence, unless the parties can agree on the plaintiff's legal fees, that matter is scheduled for a hearing on March 1, 1991 at 2 p. m.
With respect to the claim for a foreclosure of the Page property in Stamford, counsel advise that the Bankruptcy Court in Bridgeport has permitted a private sale of the premises with the proceeds to be paid to the trustee in bankruptcy to be disbursed to the plaintiff in accordance with this decision, and subject to approval of the Bankruptcy Court. This therefore renders unnecessary the entry of a decree of foreclosure against the property in question.
So Ordered.
Dated at Stamford, Connecticut this a day of February 1991.
WILLIAM B. LEWIS, JUDGE